Good afternoon. We'll go ahead and call the first case for the afternoon, Stone v. Troy Construction Company, Mr. Miller. Good afternoon, Your Honors. May it please the Court, my name is Matt Miller. I represent appellants in this appeal or plaintiffs below. I request to reserve five minutes of my time for rebuttal. Your Honors, at the outset, though the merits of plaintiff's affidavit claim are not at issue in this appeal, I believe it is worth touching on the basic facts supporting their claim, as they also bear on the willfulness issue. Before I turn to addressing, under the Court's guidance, the questions posed by the Court. I think we've all read the briefs. We're on top of the facts. If there are things you want to get to as we're talking that you want to emphasize, we'll certainly understand. But I would like to start by asking you about your insistence that, in effect, who knew there could be summary judgment in this case? You moved for summary judgment on the issue of willfulness. You put it in front of the Court, you argued hard for it, and then it went against you, and your assertion now is essentially surprise, 56-F. How do you square that? How do you answer their argument that you can hardly complain because you're the one who moved and put it before the Court? Mr. Chair, Your Honor, as this Court has previously found in Gibson, there is an exception to Rule 26-F's notice requirement that you don't always need explicit notice. Sometimes notice is constructive. Specifically, when someone moves for summary judgment, they put an issue before the Court, and in Gibson, the Court held that where it is a pure legal issue, they're certainly on constructive notice that the Court... But here, you're the one who was in effect telling the Court, hey, there's no fact, there's no room here for any disagreement about the facts. Is your assertion that there's no room for any disagreement about the facts if you agree with me, but if you disagree with me, there's lots of room for disagreement about the facts? In this situation, in this specific case, Your Honor, I believe all the facts were put on the table, but... Then how could there be prejudice? Well, in holding that on a factual issue that explicit notice isn't required, I think it overlooks the burdens or the standard that applies in a summary judgment motion. When plaintiff moves for summary judgment, they know that the Court is going to consider all the facts presented in the light most favorable to the non-moving party. I thought your argument on this point was that the Court erred in granting sua sponte summary judgment, and whether we're looking there at Gibson or 56F, you seem to acknowledge that all the facts were available. So are you saying that a violation of 56F is not subject to harmless error analysis? Your Honor, in this specific case, all the facts were before the Court, but it's worth noting that in presenting the facts, plaintiffs had to present them in a way that acknowledges the standard that's going to be applied, which means framing them in the light most favorable to the defendant, and then trying to argue to the Court that despite that, the Court should still grant summary judgment. The whole purpose of notice is to give the party an opportunity to put their best foot forward. But if all the facts were put forward, what prejudice are you claiming? Well, Your Honor, it deprives a party of being able to frame the facts in a way that, for the purpose of opposing a motion for summary judgment. Okay, what arguments would you have made then? Give us a précis of what you would have argued. Well, Your Honor, it's essentially the same argument, but I think it's important to note that plaintiffs didn't just move on wilfulness. It was one of, I think, five different things they moved on, and there's limits on space and time that each argument competes for the plaintiff's time and resources. But certainly, had plaintiffs known that by filing a motion for summary judgment that they could potentially lose the entire case, it would have presented a more detailed analysis, which I did in this case. We're trying to get specific, and you've reserved five minutes for rebuttal, so we're kind of short on time here. What would you have said differently? What would your argument have been that you didn't get to make because of this? Your Honor, I think we would have emphasized more the fact that Troy Construction admitted that it knew the only reason it did not have to include the per diem in the regular rate was because it was a reimbursement. It knew that it was not providing a reimbursement to the local employees because it knew that those local employees were not incurring the same expenses that the out-of-town employees were incurring. Troy Construction admitted that it knew it had local employees. It admitted that they were not incurring these expenses, and yet it said, we took no action to determine whether we were paying them correctly. We relied on them to tell us whether or not they should accept extra payments. Is that enough to establish willfulness? I believe so, Your Honor. Moving on to the question of willfulness, the standard for... Before you do that, what other evidence of willfulness would you have argued? The only other piece of evidence, other than Troy's explicit acknowledgment that essentially it was violating the law, is that it also changed the way it treated the payments in terms of taxes. It started treating them as wages for tax purposes, but didn't change how it dealt with the regular rate. But you made all of those points. So, I mean, is your argument that you would have just had a bigger word count devoted to those same arguments? Your Honor, I think that perhaps this oversimplifies it. I think we have to acknowledge that an attorney who's presented with more space and knows the stakes might present a more compelling argument. Let me ask you something else on this point, because you started out talking about Gibson. But Gibson predated the 56-F language. But do you concede that Gibson survives 56-F? That is, that you can still apply concepts of constructive notice? I believe so, Your Honor, when it's a pure legal question. Because an argument that a party is going to make when they file a motion for summary judgment on a pure legal question is essentially the same one they're going to make in opposing it. That's not the case when it's a factual issue. You might leave facts. A party, and I'm not saying it happened in this case, but a party may leave facts out of the presentation to the court that they otherwise would have included in opposition. For example — But isn't the issue here a legal one that is essentially sufficiency of the evidence? Your Honor, under Suryavarman, whether a defendant recklessly showed reckless disregard for whether it was violating the FLSA is a question of fact. Well, the ultimate willfulness question is a question of fact. But the threshold question of whether there is a genuine issue requires examination of the sufficiency of the evidence in the record, which we typically characterize as a legal issue. That's correct, Your Honor. Again, it may not be the case in this specific case, but if this rule is handed down, that constructive notice can apply to factual issues. There's no way to guarantee that a party who is not opposing a motion for summary judgment is going to present all of their evidence. Let me ask you a question about Suryavarman because you put it on the table. Do we have to overrule Suryavarman for you to win? Well, Your Honor, I believe Suryavarman to the extent it requires something in addition to just meeting the recklessness standard, meaning a level of egregiousness, then it has to be overruled. We're bound by Suryavarman, right? I mean, we're a panel. We can't be overruling another panel. So what would you have us do? In answering that, I'm interested to know what you'd have us do with the words that follow the word alternatively in that opinion. I think you know the passage I'm talking about, right? Absolutely, Your Honor. I think the facts of this case are analogous to the decision in Flores that this court referenced in its alternative holding where a company made it, or in this case it was a city, made a decision regarding a certain type of pay and then never revisited it and took no steps to determine whether excluding it from the regular rate was in compliance with the FLSA. Now, you've used the word alternative holding, and in fact, that's how we said it in the question to you. But is it an alternative holding? Is it dicta? How should we view? I mean, there's a holding, and then the court says alternatively and says some things about what the record indicates. What's your position on whether that thing in the alternative is a holding that's binding on us or is dicta? Do you have a position on that? Your Honor, I think it should be considered as dicta, and for this reason, earlier in the opinion the court stated that there were no violations after the email for the two appellants that appealed. In the alternative holding, as the court called it, it addressed the situation that would have occurred if some violations did occur after the email and said that that would not be enough to be willful. But that's an opinion that's not addressing the actual facts in the case, which I think makes it dicta. Right. You're on our time now, but we had two other questions, and I don't know whether my colleagues want to address either of those here, but there is one that I do want to make sure we talk about, and that's whether the other opt-in plaintiffs may maintain the case if Ms. Stone was dismissed. Now, one will certainly be asking your colleague on the other side about that. What's your position on that? Your Honor, the statute is plain in that when you file a written consent, you are a party plaintiff. Recently, last year, the 9th and I believe the 11th circuits in Campbell and Nichols, respectively, held that to be the case. This is not a Rule 23 class action where the named plaintiff has special legal rights as the certified named plaintiff or where class counsel is certified as class counsel. In an FLSA opt-in case, all the opt-ins are on equal standing with each other. For example, courts in this circuit permit opt-ins to hire other counsel if they like. They have all the rights of the quote-unquote named plaintiff who initially files it. So Troy Construction, my colleague, cited this to court's decision in Howley for the proposition that either Ms. Stone doesn't have standing to bring the appeal on their behalf or that they've waived their rights. And I think this case is distinguishable on both accounts. One, in Howley, the district court had decertified the case below. In this case, the court has not decertified it. It just held a granted summary judgment for all the claims. And so Ms. Stone, along with every other opt-in, has essentially filed this appeal. Well, what if Ms. Stone is not a viable class representative and we're in, I'd say, hypothetically, in a two-year statute of limitations world? At that point, what's the right disposition here? Would we be reversing summary judgment and sending it back for things to proceed or simply instructing the district court to amend its order to dismiss without prejudice? I believe the correct way to proceed would be to remand the case to proceed with the nine opt-in plaintiffs because they're independent party plaintiffs. The case was not decertified, and so the case remains certified as a collective action. Now, there's pending motions that were mooted that the court did not reach, and I think this court should direct, in that event, direct the district court to decide the motion for decertification or any other pending motions. But I don't believe there's any reason to not allow the nine opt-ins to proceed in a collective action that has not been decertified. And is there a requirement that they intervene? I mean, how do we or why should we assume that if it were a two-year statute of limitations that the opt-in plaintiffs would still want to move forward? They've given no indication that they would not. They have claims that are filed under two years. Probably, I don't know the numbers in front of me, but the bulk of their claim is probably under two years. I can't, you know, I don't know exactly. So, I mean, they're free to voluntarily dismiss if they say that we don't want to proceed. But up until this point, there's been certainly no indication that they don't. They're represented by my law firm. They have not sought separate counsel or made any other decisions to give up the case. If they seek to do that, it's the district court's discretion to allow them to simply proceed, right, without the main plaintiff in the case? Well, I don't think it's – I do not think there needs to be a distinction, that there is a distinction between the main plaintiff and these other opt-in forms, or these other opt-in plaintiffs. The importance of it – I mean, there's no mention in the statute or regulations regarding the main plaintiff. The only importance of the main plaintiff is that they file the initial claim and that when they file a motion for conditional certification, the court has an ability to compare persons who are in the case, the main plaintiff, to people that join the – or that potentially join the case. After people join the case as opt-in plaintiffs, they're all on an equal setting, all on an equal footing. So what happened essentially is that the district court granted summary judgment on the willfulness claim, which, due to the statute of limitations, knocks out anyone who is not within the two-year statute of limitations, and the remaining case, which is made up of the nine opt-in plaintiffs, should continue. All right. A quick question on the consent itself, because what we have here in terms of a declaration doesn't acknowledge Stone's role in the litigation, the fact of the litigation. It reads like the declaration of any fact witness. How can that be enough for consent? Your Honor, I think that context is important. I think there's nothing in the FLSA statute that requires an employee to file a written consent to become a party plaintiff that says that that document has to stand on its own to give an indication that that person wants to be a party plaintiff. In Faust and Butler, the court said that you can look to the context of the litigation. You can acknowledge that this person sat for a deposition, this person hired an attorney, this person in their declaration, which was filed in support of a motion for conditional certification, referenced the underlying facts of litigation and identified other individuals, as Ms. Stone did here. But we know we can't look to conduct, right? We need a consent, not just a course of conduct that indicates someone wants to participate, right? Well, I think the requirements are you need a written document filed with the court. And so what is the threshold? How would we draw the line to say that this declaration constitutes a consent, but some other person, a fact witness who fills out a declaration, that's not a consent? Well, right. And, Your Honor, the way to distinguish between those two situations is a fact witness didn't sit for a deposition, and their name isn't on the- Do we take the existence of the complaint into account? Does the complaint itself have any bearing on this? I believe you can look at the entire litigation as a whole, the fact that the person's name is on the complaint. And what do you rely on for that? What case do you have or what authority do you have that we can pull that in? Well, I believe Faust and Butler provide that. Essentially, context is important. I believe in both cases the plaintiffs had sat for depositions. The court found that significant. In both cases, the writing referred to the underlying facts and made an allegation that the unlawful- Does that matter? I don't think so, Your Honor, because Ms. Stone, who has filed it in support of a motion for conditional certification, was alleging the underlying facts that support her claim and also identifying other potential options. Okay. We'll add five minutes to your time on the other side. Judge Roth, do you have anything else you wanted to ask? All right, thanks. We'll have you back on Mr. Miller. Good afternoon, Your Honors. James Boudreau of Greenberg Traurig for the Defendant at Pali, Troy Construction, LLC. Well, first of all, I mean, we obviously think Judge McGregor-Kelly got this right, that Ms. Stone's claim is, in fact, time-barred. Frankly, we move thinking that the claim is time-barred under the three-year statute, and we continue to assert that, that it is even-you know, if you accept that the consent form that Ms. Stone filed on March 22, 2016, commenced the action, it would still be barred. How do you-I'm just curious how you can defend the summary judgment that the district court issued when, in front of the district court, your side made the argument that there were issues of fact that needed to be addressed on willfulness? Your Honor, we didn't make the point that there's issues of fact that need to be addressed on willfulness. That was in opposition to the plaintiff's motion to avoid the entry of judgment. Yeah, so there's suddenly-I put it to you the same way I put it to him. There's issues of fact if it favors you, but there's no issues of fact if it's going to be summary judgment for you. The fact issues disappear. Not a common-not an uncommon occurrence in cross motions for summary judgment. Here, genuine disputes exist regarding whether Troy recklessly disregarded his FLSA obligations. That's a quote and a sentence standing all by itself. Here, genuine disputes exist regarding whether Troy recklessly disregarded his FLSA obligations. That is in opposition to the plaintiff's motion for summary judgment. So your assertion is that that line, that assertion, that there are genuine issues, disputed issues of fact, doesn't count if the court, on its own motion, because you didn't move for summary judgment, if the court on its own motion decides, hey, I don't think there are issues of fact here, you're good, because even though you said there are issues of fact, there really aren't because the court said there aren't. Have I understood you right? Correct, Your Honor. We did move for summary judgment on the statute of limitations. Not on this? Not on the two versus the three year. What about your statement that questions of good faith and intent are undeniably inappropriate for summary adjudication? I think that that's, again, in an effort to avoid the entry of summary judgment against the party on liability. I don't think that's an unusual position to take. Is it your position today that questions of good faith and intent are appropriate for summary adjudication? They can be, depending on the record, but I think that there's no doubt in it. That's what it looks like it's coming down to here, right? I appreciate that, Your Honor, but the reality is when you're opposing summary judgment, you're in a very different position than when you're moving for summary judgment. Well, that's, in fact, Mr. Miller's exact argument, right? When we ask him the questions about you moved, how can you complain? And that's the argument you've made. Now you're making his argument for him, aren't you? Well, no, I'm not, and I'll tell you why. Because I think the differentiating factor in this case from all the other cases that talk about sort of these shifting burdens in a context like Gibson and whatnot, the 56F issue, for example, is that the burden here in this case on the willfulness issue is on the plaintiff. It is the plaintiff's burden to prove willfulness. True enough. What I'm struggling with is in responding to that burden, your assertion to the court was you cannot possibly grant summary judgment because there are material disputes of fact on a fact issue. Now you're saying there are no disputes of fact on a fact issue because they had the burden of proof. That's a logical thing that just doesn't seem to follow at all. I don't think it's a fair characterization, though. And it's because when you're opposing summary judgment, what you're saying is there are issues of fact that prevent you from entering judgment against us, liability, which is, I think, very different. Well, I can appreciate that there are differences, but maybe we're just kind of beating the proverbial no longer living horse. But when I've heard that argument made, it's in the context of cases where the burden of proof is actually in play and somebody's wondering about how the burden moves. Here, if there's an issue of fact, it doesn't matter who's got the burden of proof. If there's an issue of material fact, no matter who's got the burden of proof, summary judgment is supposed to be improper because Rule 56 says you can't grant it if there's a genuine dispute of fact. I'm trying to figure out where you're getting the theory that if there's a dispute of fact, it's still okay for summary judgment to go your way. Where in Rule 56 or any of the law associated with it do you find a rule that says a material dispute of fact evaporates if the ruling's going my way? I think it has to do with the burden of proof and the fact that we're throwing up. And again, I don't mean to be redundant or not answer the question, and maybe it's not capable of being answered to your satisfaction. Well, right. It might be that you're in a spot where you can't answer that, and I appreciate that. Why don't we have enough here to create a genuine issue of material fact? We pointed you to an 11th Circuit case and a 5th Circuit case where, as here, a sophisticated employer entered a uniform policy knowing that there were some employees to whom it wouldn't apply, and it didn't take any action to identify which ones or how it would distinguish among them. I think that if you look at the 11th Circuit and the 5th Circuit cases, they are distinguishable from this case. And the reason for it is the pay practice here, this per diem practice, is not per se unlawful. It's a completely legitimate pay practice under the right circumstances, provided that certain criteria are met. And there's no doubt or there's argument in this case that some of those criteria as to certain of the employees were not met. But isn't that the problem? I mean, it's the willful disregard here, reckless disregard encompasses willful blindness, right? Well, I think you get, I think there's a big distinction between an FLSA violation and willful disregard of the FLSA. The fact of the matter is the FLSA is a very complicated statute. You guys see enough cases. It is very susceptible to misinterpretation, mistake. Indeed, but we're talking about whether there's some material issue of fact here, right? Whether the record can be read to put willfulness in play. Their argument is, hey, we told the court we had record evidence to show that they knew that you could conclude from what we said that Troy knew that they were giving per diems to people who were local, that they knew that these things were going to be and needed to be considered as wages. Their accountant told him so. And they in fact counted them as wages when it was to their benefit on their tax returns. So they knew they were given what amounted to wages to local people. And yet they didn't include them for overtime. They they point to record evidence. Now, you can say we don't like that evidence or it's you don't have to view the record that way or. But we've gone back and looked at the record. I mean, why? Why isn't there enough there at least to do exactly what you said in your briefing to the district court and say there are material disputes of fact here? Because I do think that the judge got it right in evaluating the evidence that was put forth in the record, which evaluating the evidence. Right. That's the way the evidence that the judge had to for you to win. We would have to look at the evidence they've put forward and say no reasonable person could look at that evidence and say there's at least a fact issue here. Right. Well, it's a clearly erroneous standard, I think, on the willfulness finding. But no, it's we we we're not looking at a fact finding here. Now you're now you're trying to tell me that this is a fact. Are you acknowledging that, in fact, the judge was in the process of fact finding here? Because if what you're telling me is that we need to look at what the district court did here and say it's a clearly erroneous standard, then you're telling me that district court found facts. Well, your honor, if you look back at some of the Third Circuit cases on willfulness, you will see that they apply clear error standards even at the summary judgment context. How can how can it possibly be the case that when we're examining whether there's whether the district court did this right, we're applying a clear and error standard? Aren't we asking just the question whether as a matter of law, the district court was correct that no reasonable juror could look at this and decide the question in another way? I agree with you, your honor. OK, we're not talking about clear error. And if we were, you'd have to acknowledge that you were going to lose because he was doing fact finding. How how do you square that? I don't want to get too far off the point, which is here. The evidence was there. And what was that evidence? It was that Troy Construction, during the time of Ms. Stone's employment, and that's all we care about, was aware that it was paying per diems to its employees. That's really all the evidence shows. It certainly shows compound with that. The evidence shows that was applied as a uniform policy and a 36 witness acknowledges that it's per diem can only be excluded for reimbursable expenses, that there are that the company knows there are employees who live locally and therefore are not incurring those expenses. And the company took no action despite having multiple forms in its files to identify those employees with even though it had permanent addresses for them. And it continued doing that even after at least as far as the IRS implications, it recognized that these these had to be treated as wages. Why isn't that enough on the other side to create a genuine issue? Because Ms. Stone's employment ended in March of 2013. The change that implicated the IRS issues that you're talking about, the accounting issue, was 2014, long after she was gone. Well, you're you're now you're trying to pin this specifically to Ms. Stone. We're talking about a collective action here with opt in issues. And the question has to go has to go beyond the name plaintiff, doesn't it? Well, there is no collective action here yet. Conditionally certified. Well, conditionally certified doesn't mean anything certified. It hasn't been decertified. Well, it was decertified by effect of the order that Judge Kelly entered the order dismissal. But there was no certification. I mean, all that a conditional certification order, quote unquote, means in the FSA context is that you get to send notice to people. And that there is and that people can opt in and that they can join the case. OK, well, and have their claims adjudicated based on the name plaintiff's status. So, well, no, when you say based on the name plaintiff's status. That is the purpose of the consent form. Speak to the assertion that we've got Ninth Circuit and Eleventh Circuit authority that tells us that once they're opt in plaintiffs, they are plaintiffs in their own right. This is not representative litigation as in a class action. They have all the rights and standing of a name plaintiff. Is that a correct or an incorrect statement? Well, I think under Third Circuit law, it's an incorrect statement of the law. Because what? And I think the Ninth Circuit expressly says that they distinguish themselves and say, we're not following how on that point. So you think that Howie says that this is, in effect, a class action that Howie says it's not a class action. It's like Howie makes this like Howie says it's in effect like representative litigation, like a 23, a Rule 23 case. It's different in kind from a Rule 23 case. The question is, at what point in time does the name plaintiff take on an interest that's beyond themselves? Howie discussed the fact that there was there and not an adverse judgment. So that the only thing that those opt ins were losing was the ability to have the name representative continue litigating. But they didn't lose their own right to do so. Here we have the district court with an order that says that the court is dismissing the case in its entirety without prejudice to plaintiffs pursuing their state law claims in the Pennsylvania courts. So as to an adverse judgment that precludes them from pursuing their rights in federal court. Doesn't that make a difference to whether these these options can remain as as plaintiffs, whether they should continue to be treated as parties? I would say this. I think that the district court's order on what happened to these opt ins is not crystal clear. I think it is ambiguous, frankly, because there is no doubt that the claims of the opt ins were not resolved on the merits. Well, when you say there's no doubt, Judge Krause has just read you the order where it speaks in terms of plaintiffs. Plural, which certainly sounds like I'm talking about all the plaintiffs and then goes on to say and you opt ins. You can go to state court and do what you want in state court, which further makes it sound like the district court knew the district court was talking about the opt ins as plaintiffs. And seems to indicate that since you can go do your state law stuff, I've ruled on your federal law claims. And indeed, what I've been saying is on a statute of limitations ground, which is a merits based decision. So how do we get to your position, which is it's clear that this was not a merits based decision? Because the judge entered summary judgment based on Miss Stone's claim. There's no doubt about that because of the consent form and the timing. It had nothing to do with the other opt ins. That may be true if the judge was thinking Stone loses, but then the judge says and all of you guys lose too and leave. Doesn't that actually make the, again, Mr. Miller's case, which is the judge here unfortunately erred. The judge ruled on a merits basis affecting these nine opt ins at least. Well, and I think we state in our papers that because the judge didn't reach the merits of the opt in claims, clearly he didn't. Wait a second. When you say clearly he didn't, if he says, if the judge says you all lose plaintiffs, the case is dismissed. That is you lose. And you can go to state court and pursue state claims. How is it clear that the judge has not ruled on those opt in plaintiffs federal claims? I'm saying that the order is clearly in the plural. I don't dispute that. I do think it was error on the judge's part in the sense of that under Halley and third circuit precedent, that dismissal of the opt ins should have been without prejudice, that the opt ins are free to go. Because Halley says if the decision results in a complaint that no longer has a collective action, which happened here because the named plaintiff is gone, and the collective action goes away. So are you acknowledging then that the court did rule on the merits as to the opt ins? Because when you say it should have been without prejudice, maybe I'm not hearing you correctly and I apologize. I don't know what was in the court's mind when they wrote it. When I read the order, I thought, oh, maybe it's a typo. Maybe it wasn't just thought through all the way. I don't know. All I know is that they didn't address the claim on the merits, I think. You know, from the reading of the order, that they clearly didn't touch on the timeliness of anybody else's claim. They didn't touch on the underlying merits of whether they were paid or not paid properly. But then whether the opt ins continue as plaintiffs and the case were to proceed would be a matter of the district court's discretion. And there's no discussion here about how or why that discretion is being exercised. I don't think that's true under Lusardi, the Third Circuit's opinion in Lusardi, which says that a district court has no power or jurisdiction to rule on the merits of the claims of individual opt in members of a putative class when it does not grant certification. This is a collective action. Lusardi is a collective action as well. It was a collective action. And the bottom line is that the typical, and Howley did this, when the name plaintiff's claim goes, there's no name plaintiff, the representative allegations go, and you're free, you're dismissed without prejudice, and you're free to go pursue your claims. File them in a court of competent jurisdiction. Indeed. Well, yes. Howley did say that, but that was in a case where there had not, well, we're down to two minutes. So let's leave this behind and move on to another topic. Suryavong, in your answering brief at 18, you say, in effect, you analogize your case to Suryavong. And in the reply brief, Ms. Stone says, look, we endorse the proposition that the defense has made here, that if the 2011 email at Suryavong did not establish awareness sufficient to establish a willful FSA violation, then Mr. O'Hare, Troy's corporate designee testimony, does not either. In other words, they say, we're prepared to accept that this is like Suryavong. And then goes on to say, and in Suryavong, contrary to Troy's recitation of that decision, the 2011 email did demonstrate enough awareness of an FLSA violation to make it willful, just not for the two appellants in that case. I would like you to take that on, right? They seem to be saying, in short, you've misread Suryavong. Suryavong, in its primary holding, indeed found there was enough to find a willful violation, but the one person who could have made that case didn't appeal. What's your response? What they're doing is analogizing the 2014 change in pay practice to that email. Well, they're actually saying you did it. They're saying you're answering briefly. You made the analogy, and they're prepared to accept that, and that if we accept that, you should lose. Right. But here, the 2014 change occurs, and then in Suryavong, the email is sent, and then none of the plaintiffs worked for the county after that email was sent. So they obviously couldn't bootstrap on to that as a basis of a willfulness violation. None of the appellants in that case. Right. And then, in this case, it's really the same thing, because in 2014 that change occurs, but again, Ms. Stone is long gone. So it can't be evidence of willfulness, this post facto act that had nothing to do with her. The fact of the matter is when she was working for the company, nobody ever complained about the practice. Nobody ever put the company on notice that there was a potential problem. And they didn't know, simply because nobody was complaining. And then, you know, so the first prong, and then you can go into the reckless disregard prong. But here, I think the judge got it right, that based on Suryavong, and frankly, not just Suryavong. If you look at other Third Circuit cases, the right case where they don't find willfulness, the allegations in those cases were far more, I hate to use this word in this case, but egregious than the ones here. But egregiousness can't really be the standard given Hazan paper, right? And more recently in Bedrosian, we have also moved away from the idea of egregiousness being synonymous with willfulness. So in context, doesn't it just mean something that was glaring or obvious in terms of what an employer should have recognized? I understand that egregiousness and the subjective factors that sometimes go into the willfulness analysis seem to be vitiated by Bedrosian or Biggins and whatnot. But I don't think you have to go there in this case. I think just based on the initial holding of Suryavong. The initial holding? Are the words after alternatively in Suryavong, are they an alternative holding that binds us, or are they dicta? You know, I don't look at it as a quote-unquote alternative holding. I look at it as a judge basically making a determination based on the ruling and saying, by the way, based on all the other cases I've seen, I'm comfortable that this is the right ruling. Okay. So in effect, it's dicta, right? They're given additional reasons, but the holding is the holding where the court says, hey, there may have been willfulness, but not for you two, right? Correct. Okay. So if we put aside egregious as a threshold itself, but in talking about what constitutes willful blindness, the Supreme Court in Globe Tech lays out two requirements, that a defendant subjectively believe or know that there's a high probability that a fact exists, and second, that the defendant deliberately avoids learning whether the fact is true or not. Why don't we have exactly that situation here? That is willful blindness that rises to the level of, that is willfulness. Because there's no evidence that there was willful blindness. There's no evidence that. Leave out the accountant. Yep. The accountant's advice. Just deal with the assertion that when they, they always knew that per diem was a reimbursement and not meant to be something to be used as wages. And they say that, O'Hare says that. They always knew that long before the accountants talked about it. And yet when they asked people about whether they should get the per diem or not, they said, you just tell us if you don't want it. Right? That's pre-accountant. Could a reasonable juror look at that and say, well, that's an effort. That's an effort at willful blindness, because no rational employer believes that an employee is going to come forward and say, yeah, yeah, don't give me money. It's just a way of saying we don't want to know. We just don't want to know. But it doesn't mean they're not going to get the money. The difference is whether it's going to be taxable or non-taxable. No, it means that you might not get a per diem and, therefore, you might not get the money. It doesn't mean that an employee thinks if I tell them don't give me that per diem, surely they'll say, okay, we'll give it to you as wages. They might very well say a rational employee would say if I say no to that money, I don't get that money and that this is the way the employer sets it up so it doesn't become wages. I'm putting it to you in those terms not because I believe that that's what the record shows, but that isn't it at least a question that a rational juror could look at and say, well, maybe that's willful blindness. I think that's a stretch to willful blindness, because it basically renders every violation of the FLSA a willful one or potentially a willful one. Not every one. Just ones where an employer says, tell you what, I'll give you a per diem, and you tell me if you don't want it. But, again, you're putting a gloss on that fact that I don't think exists in the record. What's in the record is that Troy put the burden on the employee to come forward and advise Troy about whether its permanent address was a local address. Troy had that information in his own records in the forms, and that placing of the burden on the plaintiff to come forward and ensure compliance was exactly the reason that the Fifth Circuit in Gagnon concluded that there was willfulness on the part of the employer. That I have to take dispute with, because Gagnon was a very different fact pattern. Gagnon had a per diem policy that was per se violative of the FLSA. That is because it was tied to hours worked. That blatantly violates the FLSA. There is no scenario under which that could possibly pass muster under the FLSA. In this case, the per diem policy passed muster for virtually the large majority of Troy's employees who were out-of-state employees. It only gets triggered when there are local employees that the issue is in this case. And even if you're a local employee, there could be instances where the per diem was valid. Indeed, I suppose there could be, but, yeah, now we're arguing at the margins again about whether there's enough there or not. But you, is there anything else you want to follow up on? On the consent and the declaration, the Supreme Court has suggested that interrogatories, signed interrogatories can be enough to demonstrate, constitute a consent. And there's no indication in its opinion that that was because there was an explicit reference to the action or that plaintiff's role in the action. So if we can infer from the fact of someone signing interrogatories that there's a consent, why isn't someone signing a declaration in support of a motion in the case enough for consent? First of all, I think that the statutory language is pretty clear. You need to have a written consent filed in court. Interrogatory answers, put it aside whether they're filed in court or not filed in court. The reality is the plaintiffs here didn't argue that they're interrogatory answers, but they were arguing that their interrogatory answers were somehow indicative of consent. The only thing that they've argued is indicative of consent is the affidavit. Well, participating in discovery is an argument that they've been making to us. Well, the contextual argument, but the reality is there's a statutory requirement. Right. Well, if you're going to argue to us that they've waived the argument, I don't think you can get a lot of traction out of that. So the question that's being put to you is if interrogatory answers are enough, why isn't a declaration of this sort, which is at least analogous to saying to the court, hey, I'm in this case all the way? Well, it's not necessarily what that says. And that's exactly why the Perkins sets up this three-pronged test of, you know, that the allegations, whether it's in an interrogatory or it's in a declaration, needs to verify the complaint, state that you have a claim and that you want to pursue your legal rights or, you know, some other indication that you somehow want to participate in this action. And when you look at the affidavit that Ms. Stone filed in this case, there's absolutely no doubt that it indicates none of those things. It doesn't even say that she was underpaid. But again, there's no indication in Barrington that that was the case with interrogatories, right? Well, I don't know if I know the case, the Supreme Court case, well enough. It certainly wasn't one of the cited ones to opine whether that was the case or not. I do know in the cases that are in this record, if you will, that the interrogatories were all tied around indicating an intent to pursue the collective allegations of the complaint. I wanted to clarify something in the record. Because you make the argument that because Ms. Stone only worked for three days, there was no overtime that would be part of the March 15th paycheck. But at Appendix 46, which looks to be the time entry list for the 3-15 paycheck, it does list overtime for the dates of March 8th, 9th, and 10th. So what's the disconnect? The argument there is that because there's only three days in the limitations window, you can't go back the other two days and add them into that work week. Despite the overtime payments that actually appear? Because if the payment is bootstrapped onto days that are outside the limitations period. So if she didn't get to 40 hours in those three days, she wouldn't have been entitled to any overtime pay that week. It's only by virtue of two days outside the limitations window and the counting of those hours. Is that two days outside the limitations window even if one includes the tolling? Well, if you included the tolling here, according to plaintiffs, that would bring that in. The appearance of overtime here suggests that had there been credit for treatment of the per diem as wages, that the overtime that appears in the 3-15 check would have been significantly greater, right? That's potential. I mean, again, we haven't gotten to the merits of whether she was entitled to the per diem for some bizarre reason or not. If she was not entitled to the per diem, yes. It would have increased the regular rate. Putting aside the 3-15, as to 3-8, you make the statement in footnote 12 of your brief that because of your argument as to that last paycheck, she doesn't have a viable FLSA claim. What's your argument that the omission of that overtime in the March 8th paycheck doesn't give rise to an FLSA claim? I'm not sure I understand the question. You seem to be arguing in footnote 12 that if the March 15th check is out, March 8th, the March 8th check is also out. And so if she doesn't have any viable claim, even if you were to – Well, the March 8th check is out, because even if you include the tolling 14 days back, that's after March 8th, I believe. No, if you do the tolling, the two weeks pick up March 8th and March 15th, right? It's the 22nd back to March 8th. Yeah, I think – Right. It's all based on the tolling issue. Right. Is there anything you wanted to ask? All right. Mr. Budo, thank you very much. I appreciate your argument. Mr. Miller, your rebuttal, please. Thank you, Your Honor. I first want to address the issue of the change in tax treatment. I think it's becoming a little bit of a red herring in this case. We do argue that that is evidence of willfulness, but it's only the latest and last piece of evidence of willfulness. Well, do you agree that, at least as to Ms. Stone, it occurs long after she's gone, so it doesn't really – or it ought not weigh in the balance when one looks at her claim? As to Ms. Stone specifically, I'd agree, Your Honor. But in the briefs, defendant – going to the Su Yervong analogy that defendant proposed and we endorsed, it's incorrect to say that defendant compared or equated the Su Yervong email to the change in tax treatment. That's not the case. Defendant compared the Su Yervong email to the 30B6 testimony, and that's what we said. Look, we agree. If the email is evidence of willfulness to the third plaintiff who did not appeal in Su Yervong, then Mr. O'Hare's 30B6 testimony is also evidence of willfulness. And so, you know, we didn't hang our hat on the tax treatment. The court – the district court described the change in tax treatment as the sole evidence that plaintiffs presented. And I think, again, that it – What specifically are you relying on to demonstrate willfulness other than the change in the tax treatment, Mr. Miller? Other than the change in the tax treatment? Right. Yes. That goes to Ms. Stone's claim, not others who were involved later. The corporate testimony, corporate designee testimony. Right. He's testified for a long time. Your point, too, is that Mr. O'Hare said that, and that shows a willful blindness to the FLSA requirements. What are you looking at? Which part of his testimony are we looking at? Precisely. Right. He acknowledges, admits that Troy Construction knew that the only reason they were allowed to exclude the per diem was because it was a reimbursement. The designee testified, it's wages. It's not wages. It's a reimbursement, several times. He acknowledged that Troy Construction had a practice of hiring local employees. Yes, most of their workforce was itinerant, meaning they're skilled workers that go to these pipeline construction work sites, but they're not going to bring in people from another state to do an administrative task or a manual labor task. And for that, they had a practice of hiring local employees. They knew that. It's in Mr. O'Hare's affidavit. Accordingly, they knew that these local employees were not incurring the expenses that Troy Construction admitted was the express intent of the per diem. They testified that the per diem was expressly intended to reimburse expenses for travel, lodging, and meals. They say even on the forms when employees would put down an address that they couldn't know if it was a temporary local address or a local permanent address. And so there's nothing unreasonable. There's no evidence of willfulness in asking employees to point that out if they, in fact, are not local. I think. What's wrong with that? I think it's very unreasonable to expect an employee, specifically an hourly worker making a low hourly wage, to be responsible for pointing out the company's obligations under the FLSA. It's incorrect to say that they were always given an option. Tell us whether you live locally or not, and that'll change the tax treatment. That happened perhaps after they changed their tax treatment. But before then, the corporate doesn't need to testify in three different places unless they told us otherwise they got the per diem, meaning if they did for some reason say, no, I live locally, I shouldn't get a per diem. What, if anything, is reflected in the record about Troy's knowledge of what was undeniably a permanent address for the employee? Your Honor, they had employees fill out the three forms. Two were official tax forms, a W-4 and an I-9, both asked for the employee's addresses. They also had to fill out an internal form. I don't think it's reasonable to believe that people are putting down for an I-9 or for a W-4 their hotel address, which is what I believe Troy Construction argued that their itinerant workers, they might be putting down hotel rooms. We don't know that it's their permanent address. Well, I don't think that's really believable. And if they had any doubts, they had an obligation to look. They know they have lots of local employees, and not one of them, the corporate doesn't need to testify to this, not one of them, they never excluded the per diem or they never included the per diem for any employee in their regular rate. So maybe on a case-by-case basis, someone slips through the cracks, and Troy Construction, acting reasonably, doesn't conduct an in-depth investigation into whether this person's address is really their permanent address. On a case-by-case basis, maybe that's reasonable. But in this case, they didn't do it for anybody. They didn't do it for, in this case, 60 opt-in plaintiffs, and in the Rule 23 class action, there's another 60. We have your argument. Thank you very much, Mr. Miller. Thank you, Mr. Boudreaux. I appreciate the argument from counsel. It's helpful. I will take the case under advisement.